EDWARD B. ZIER *vs.* JOSEPH R. HOFFLIN.

January 3, 1885.

**Libel—Words Held Not Libellous Per Se.**—The words "Wanted, E. B. Z., M. D., to pay a drug bill," are not libellous on their face.

**Same—Circumstances.**—But they may become libellous from the circumstances under which they are published; following *Woodling* v. *Knickerbocker*, 31 Minn. 268.

**Same—Publication in Newspaper.**—Where one authorizes an item to be inserted in a newspaper without directing in what part of it, he is responsible for its insertion in any part in which the publisher of the paper may place it.

**Same—Item Circulated by Third Person.**—Where one publishes a libel in a newspaper, and, without his knowledge, a third person cuts the libel from the paper and sends it to another person, the first is responsible for its being so sent, if the sending it was a natural consequence of its publication in the newspaper, of which the jury are to judge.

Appeal by defendant from an order of the district court for Hennepin county, *Lochren*, J., presiding, refusing a new trial, after a verdict for plaintiff for $1,500. The case is stated in the opinion.

*Woolley & Reed*, for appellant.

The words charged are not libellous. *Robertson* v. *McDougall*, 4 Bing. 670; *People* v. *Jerome*, 1 Mich. 142; *Bennett* v. *Williamson*, 4 Sandf. 60; *Homer* v. *Engelhardt*, 117 Mass. 539.

*Ripley & Morrison*, for respondent.

GILFILLAN, C. J. According to the complaint, the defendant falsely and maliciously caused to be published, concerning the plaintiff, in a newspaper called the "St. Paul & Minneapolis Advertiser," widely circulated in the cities of Minneapolis and St. Paul, this: "Wanted, E. B. Zier, M. D., to pay a drug bill,"—in a part of the newspaper with the heading "Wanted," and among other similarly suggestive items, of which this may be taken as a specimen: "Wanted,———— to pay his room rent, and not go dead-heading his way;" and to further publish it, defendant cut the item concerning the plaintiff out of the paper, pasted it upon a postal card, and sent it through the

post-office to a young lady in Minneapolis to whom plaintiff was engaged to be married. Defendant meant by the publication that the plaintiff was an absconding debtor, and a dishonest person not entitled to the confidence and respect of the community.

Defendant contends that the complaint does not allege facts sufficient to constitute a cause of action. We do not think the words published come under the third class in the classification given in *Pratt* v. *Pioneer Press Co.*, 30 Minn. 41, *i. e.*, of words clearly defamatory on their face. For the only facts suggested by them standing alone,—to wit, that the plaintiff owes a drug bill and that the creditor wishes him to pay,—do not necessarily impute anything wrong to plaintiff. But words which may be innocent of themselves may be rendered libellous by the place and circumstances of their publication, for such place and circumstances may impress on them a meaning and suggestion which, standing alone, they do not have. Thus, though the words here do not of themselves impute wrong, they might be published in such a place or under such circumstances as to make them capable of naturally conveying the impression that plaintiff had been guilty of dishonest practices, either in contracting the debt or in withholding payment of it. And so they come under the second class mentioned in the case referred to, of words reasonably susceptible of a defamatory as well as of an innocent meaning. What meaning they would naturally convey was for the jury to determine, in view of the circumstances of their publication. In this respect the case is similar to *Woodling* v. *Knickerbocker*, 31 Minn. 268.

Although the publication of the words alleged is admitted in the answer, it was proper for plaintiff to put the number of the newspaper in evidence, to show the circumstances of their publication, the allegations of which in the complaint are to some extent denied by the answer. It was proper for the jury to see from the newspaper itself among what character of items defendant had caused his item to be placed; what company he had chosen for it.

And here we will notice what defendant claims as to the evidence. He insists that (as the evidence shows) he did not know of the other matters to be published in the newspaper, and that he gave no direction as to the place or mode of publication. It is apparent, however,

that defendant knew, at least in a general way, what sort of publication the newspaper was; what sort of items were to be inserted in it. Giving to the publisher this item to be inserted, without directing in what part of the paper it should be placed, was authorizing the publisher to place it in any part he should choose, and the defendant is responsible for the choice of place as though he had made it personally.

At the trial, defendant objected to the introduction of the postal card as incompetent, and that defendant had not been in any way connected with it. There was no evidence that defendant sent it or caused it to be sent. The original is not returned here, only a written copy. It is proper to assume, the contrary not appearing, that the slip pasted on the card appeared to be—bore some evidence on its face that it was—defendant's item, cut from a number of the issue of the newspaper in which he authorized it to be placed; that it was of his publication. Sending it upon the postal card to the young lady was only a further publication of it; an extending of the publication made by defendant. Now, although one who publishes a libel is not to be held responsible for an independent wrong done by a third person, though connected with the libel, he is responsible for the natural consequences of his own wrongful act, although the wrongful act of a third person may concur in bringing about such consequences. If it were a natural consequence of defendant's publication through the newspaper that some evil-disposed person should send a copy of the paper, or the item cut from the paper, to some one whom defendant had not thought of its reaching, he would be liable for it as the consequence of his own wrong. Townshend, Sland. & Lib. 158; *Miller* v. *Butler*, 6 Cush. 71. It was for the jury to say whether sending the postal card by a third person was a natural consequence of defendant's publication in the newspaper.

We do not consider the damages excessive.

Order affirmed.