JOSIAH E. BRILL AND ANOTHER v. MINNESOTA MINES, INC. AND OTHERS.[1]

July 16, 1937.

No. 31,208.

[1]Reported in 274 N. W. 631.

*William E. MacGregor,* for appellants.

*M. U. S. Kjorlaug, Paul J. Thompson, Edward P. Kelly,* and *Brill & Maslon,* for respondents.

GALLAGHER, CHIEF JUSTICE.

Appeal from an order of the district court, Hennepin county, overruling demurrers interposed by defendants (1) to plaintiffs' entire complaint; (2) to the first cause of action set forth therein; and (3) to the second cause of action set forth therein.

The alleged causes of action are for libel arising out of the publication of a letter written by defendants and mailed by them to various stockholders of a corporation known as Redemption Gold Corporation.

Plaintiffs are partners practicing their profession as lawyers in Minneapolis. It appears from the complaint and the correspondence attached thereto as exhibits that on March 27, 1936, one Don L. Leach, a promoter and organizer for Redemption Gold Corporation, by letter solicited various minority stockholders of that corporation to attend a meeting to be held at plaintiffs' office on March 29, 1936. A few days after this meeting plaintiffs mailed to the various stockholders of the company a letter reading as follows:

"Brill & Maslon
"Lawyers
"500-510 Builders Exchange
"Minneapolis

"April 2, 1936.

"Dear Sir:

"You are either one of the parties who were present at the meeting of stockholders of Redemption Gold Corporation held at the Office of the undersigned last Sunday, March 29, or somebody present stated that in his opinion you were agreeable to the plan there adopted.

"The plan was to organize a committee to represent the stockholders in their controversy with the corporation and with Minnesota Mines, Inc. and the officers of these companies. A committee was appointed consisting of E. A. Kelley, S. A. Sangsland and O. L. Broman, whom the undersigned represent.

"It was agreed at the meeting that we would prepare a written communication to be sent by each of you to the Committee authorizing them to act for you in connection with such matters, so that before you committed yourself to the matters, contained in the enclosed form, you would have clearly before you the proposal in writing. If, after you have read it over, it meets with your approval, will you please sign and date it and send it to us in the enclosed envelope by return mail.

"Very truly yours
"Brill & Maslon,
"By J. E. Brill."

Enclosed with the letter to said stockholders was a proposed employment agreement setting forth the terms and conditions under which plaintiffs would undertake to. represent the stockholders in asserting certain claimed rights against Redemption Gold Corporation. Under the proposed contract each stockholder was to pay a sum not exceeding five dollars toward disbursements, and plaintiffs were to be paid a contingent fee of 50 per cent of the net amount of any recovery, whether in stock or in cash. The pro-

posed contract was modified by a supplemental letter to the stockholders changing the commission basis from 50 per cent to 33 1/3 per cent of the amount of recovery.

· Defendant Minnesota Mines, Inc. is a foreign corporation. The other defendants were officers of the corporation. It appears that prior to the writing of the letters involved herein there were some negotiations for the exchange of stock of Redemption Gold Corporation for the stock of Minnesota Mines, Inc., and at least one conference was held between Josiah E. Brill, one of the plaintiffs, and Harry S. Carson, one of the defendants.

On April 24, 1936, defendant Minnesota Mines, Inc. wrote a letter signed by all of the individual defendants as officers of the corporation to plaintiffs protesting their action and the action of Leach in soliciting representation of the stockholders. Enclosed with this letter were copies of certain correspondence referred to therein. The letter contained the two following paragraphs which plaintiffs claim are libelous *per se*. The first reads:

"We now learn that said Leach, either while he was working for Minnesota Mines, Inc., and Redemption Gold Corporation or immediately thereafter, solicited each of these stockholders in an attempt to get them to entrust their affairs to you and Leach."

The second reads:

"It is obvious that the real purpose of Leach and yourselves is to create all the trouble that you can and if your efforts should produce anything, the real beneficiaries would be LEACH and YOURSELVES and not the stockholders whom you purport to represent."

Copies of this letter were mailed by defendants to several stockholders of Redemption Gold Corporation.

■ Applying the rules so often followed by this court, we hold that the first statement above referred to is not libelous *per se*. The words used do not charge plaintiffs with solicitation, nor do they imply that plaintiffs, or either of them, were in any way responsible for the conduct of Leach. They carry no import other than the inference that Leach, for some undisclosed reason, while

working for Minnesota Mines, Inc. and Redemption Gold Corporation, or immediately thereafter, solicited stockholders of the latter corporation to entrust their affairs to plaintiffs and Leach. Of itself there would be nothing improper in Leach's recommending plaintiffs as attorneys and counsellors to his friends if he desired to do so.

Nowhere in the statement complained of is there anything directly charging plaintiffs with solicitation. Words may be divided into three classes: (1) Those that cannot possibly bear a defamatory meaning; (2) those that are reasonably susceptible of defamatory meaning as well as an innocent one; and (3) those that are clearly defamatory on their face. Pratt v. Pioneer Press Co. 30 Minn. 41, 14 N. W. 62; Zier v. Hofflin, 33 Minn. 66, 21 N. W. 862, 53 Am. R. 9; 4 Dunnell, Minn. Dig. (2 ed.) § 5509; 36 C. J. p. 1149.

As applying to these plaintiffs, the court considers the words referred to as being within the first class. The construction contended for by the plaintiffs is a strained one, and in our opinion the part of the letter complained of is not susceptible to the inferences given it by plaintiffs. Defamatory words to be actionable must refer to some ascertained or ascertainable person, and that person must be the plaintiff. 36 C. J. p. 1158.

A more serious question presents itself as to the other cause of action set forth in plaintiffs' complaint. Therein plaintiffs are unequivocally charged with fomenting litigation for their own benefit and against the interests of their clients. 2 Mason Minn. St. 1927, § 10112, defines libel as:

"Every malicious publication by writing, printing, picture, effigy, sign, or otherwise than by mere speech, which shall expose any living person, or the memory of one deceased, to hatred, contempt, ridicule, or obloquy or which shall cause or tend to cause any person to be shunned or avoided, or which shall have a tendency to injure any person, corporation, or association of persons in his or their business or occupation shall be a libel."

Language used in reference to persons must be taken in its ordinary signification and construed in the light of what might

have been personally understood therefrom by the person who read it. Stroebel v. Whitney, 31 Minn. 384, 18 N. E. 98; Herringer v. Ingberg, 91 Minn. 71, 97 N. W. 460; Quist v. Kiichli, 92 Minn. 160, 99 N. W. 642; Tawney v. Simonson, Whitcomb & Hurley Co. 109 Minn. 341, 124 N. W. 229, 27 L.R.A.(N.S.) 1035; Ernster v. Eltgroth, 149 Minn. 39, 182 N. W. 709; Schendel v. Mundt, 153 Minn. 209, 190 N. W. 56.

It may be assumed that the person to whom the letters in question were mailed were persons of ordinary intelligence. The question is: "How would such persons understand the language used?"

It seems to us that they might well have understood defendants to charge that plaintiffs were endeavoring to foment litigation for their personal benefit. Such a reputation would be detrimental to plaintiffs as attorneys and counsellors at law. If true, it would be reprehensible. That part of the complaint in which plaintiffs are charged with stirring up litigation for their own benefit in our opinion states a cause of action, and the demurrer to that cause of action was properly overruled, as was the demurrer to the entire complaint, because if the complaint stated a cause of action on any of the counts set forth it would be necessary to overrule the general demurrer.

Respondents contend that even though the complaint states a cause of action the truth of the allegations appears from the complaint. Assuming for the purpose of argument only that such contention is true, plaintiffs are nevertheless charged with something more, to-wit: an attempt to get clients for the purpose of absorbing the whole benefit of the litigation to themselves and leaving nothing for their clients. The truth of that charge does not appear from the complaint, and to that extent the complaint should be held good against a demurrer.

The order of the trial court overruling defendants' demurrer to the entire complaint and to plaintiffs' first cause of action is affirmed. The order overruling the demurrer to plaintiffs' second cause of action is reversed.

So ordered.

JULIUS J. OLSON, JUSTICE (dissenting).

I concur in everything that has been said under subdivision one of the majority opinion. But I find myself unable to agree that the language referred to under the second subdivision is libelous *per se*. One of the primary rules of pleading, in fact, one of its principal objectives, is to apprise each party of the grounds of claim or defense asserted by the other to the end that each may come to trial with the necessary proof and be saved the expense and trouble of preparing to prove or disprove facts about which there is no real controversy. True, pleadings are but means to an end, the end being the proper administration of substantive law; yet the rules thereof are to be applied and enforced so as to disclose fully and freely the respective claims of the parties, thereby facilitating and hastening the trial of the real issues. 5 Dunnell, Minn. Dig. (2 ed.) §§ 7498 and 7498a, and cases cited under the notes.

Granting the premise just stated, the real test to be applied here is whether the complaint as a whole contains a *false* charge on defendants' part as applied to the plaintiffs so as thereby to injure them in their profession or calling. The basis for liability necessarily must be limited to that part of the statute quoted in the opinion which relates to plaintiffs' profession, nothing else being involved. Assuming that plaintiffs truthfully pleaded their cause, as we must upon demurrer, it necessarily follows that we are compelled to accept every material allegation stated in the complaint in determining whether or not the demurrer was improperly overruled. To me it seems plain that plaintiffs' letter, enclosing as it did a contingent fee contract with stamped envelope for its speedy return, was clearly and distinctly an active intervention in the solicitation of professional business and as such violative of the 27th canon of ethics of the American Bar Association as well as our own. Defendants' letter is sharply written and was clearly intended as a criticism of plaintiffs' conduct. But under the circumstances related and as pleaded in their own complaint, such conduct was properly subject to criticism, and it is not our business to stretch the law of libel "to redress every breach of good morals

or good manners." Stewart v. Minnesota Tribune Co. 40 Minn. 101, 103, 41 N. W. 457, 458, 12 A. S. R. 696. Their own complaint establishes that defendants' statement, here complained of, speaks the truth. Truth is a complete defense. Hoff v. Pure Oil Co. 147 Minn. 195, 198, 179 N. W. 891, 11 A. L. R. 1010.

The construction placed upon the alleged offending language is not, as I read it, warranted. As a matter of fact, the court is simply providing plaintiffs with a much needed crutch to cure a fatally defective pleading.

Reference to 4 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) § 5520, and cases there cited, furnishes sufficient guides to decision here. To my mind there is total failure on plaintiffs' part to plead any cause of action. The demurrers should be sustained and an end put to this litigation, which obviously will resolve itself into nothing but expense and needless vexation.

HOLT, JUSTICE (dissenting).

I concur in the above dissent.

